UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

SYLVIA GAIL KINARD,

                Plaintiff,

      -against-

DR. RUDOLPH L. CREW, in his individual and
official capacity, MEDGAR EVERS COLLEGE,
and THE CITY UNIVERSITY OF NEW YORK

             Defendants.
----------------------------------------------------------------x

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Case No: 19-CV-01065 (BMC)(LB)

      Plaintiff SYLVIA GAIL KINARD, by and through her undersigned attorney, brings this action and complains of the Defendants as follows:

**PRELIMINARY STATEMENT**

      Plaintiff alleges that Defendants unlawfully retaliated against Plaintiff and terminated her. Plaintiff alleges that the unlawful retaliation and termination were the result of the policies and practices of the City University of New York, Medgar Evers College, and Defendant Dr. Rudolph L. Crew. Plaintiff brings this action seeking to recover monetary and affirmative relief based upon the Defendants' violations of title VII of the Civil rights Act of 1964, as amended (hereinafter "Title VII"), she brings this action to recover damages for violations of the Civil Rights Act of 1866, as amended, the Civil Rights Act of 1871, the First and Fourteenth Amendments to the United States Constitution, the Constitution of the State of New York, 42

1

U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, Executive Law § 296 et seq. (hereinafter "NYSHRL"), the New York City Human Rights Law, NYC Admin. Code § 8-101 et seq. (hereinafter "NYCHRL"). Plaintiff seeks an award of attorney's fees and costs pursuant to 42 U.S.C. §§ 1981 and 1988 and applicable laws, rules, regulations, statutes and ordinances.

## JURISDICTION

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 2201, and 2202. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-(f)(3). The substantive claims in this action arise under 42 U.S.C. § 1981 and the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

2. Venue is properly laid pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York where the Plaintiff resides and where the actions complained of herein occurred.

3. The amount in controversy, excluding costs and interests, exceeds the sum of one hundred thousand dollars ($100,000).

## SATISFACTION OF CONDITION PRECEDENT

4. On or about September 5, 2018, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), charging the Defendants with unlawful discriminatory practices and retaliation, and was assigned EEO Charge Number 520-2018-04074.

5. EEO Charge Number 520-2018-04074 was filed within 300 days of one or more of the unlawful employment practices alleged.

6. On or about December 2, 2018, Plaintiff received a notice of her right to sue, which was dated November 29, 2018.

7. Plaintiff commenced this action on or about February 19, 2019, within ninety (90) days of receiving notice of her right to sue.

## PARTIES

**Plaintiff**

8. Plaintiff Sylvia Gail Kinard, Esq., is a woman and she is/was at all times relevant to this action a citizen of the United States of America and a resident of Kings County, New York City, New York State.

9. Plaintiff is an attorney, licensed to practice law in the State of New York, and was at all times mentioned herein, qualified to serve as a Chief Diversity Officer and/or Title IX Coordinator.

10. At all times relevant to this action, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f), NYSHRL § 292(5) and NYCHRL § 8-102(1).

**Defendant CUNY**

11. At all times mentioned herein, Defendant, the City University of New York (hereinafter "CUNY"), is and was the public university system of New York City, comprised of numerous colleges and postgraduate institutions, including but not limited to, Medgar Evers College, the City College of New York, John Jay College of Criminal Justice, and Kingsborough Community College.

12. At all times mentioned herein, CUNY is and was an "employer" within the meaning of 42 U.S.C. § 2000e(b), NYSHRL § 292(5) and NYCHRL § 8-102(5).

13. At all times mentioned herein, CUNY employed more than fifteen (15) employees.

14. At all times mentioned herein, CUNY is and was vicariously liable for the actions of the individual defendants herein and Defendant Medgar Evers College.

**Defendant Medgar Evers**

15. At all times mentioned herein, Defendant Medgar Evers College (hereinafter "Medgar Evers") is and was a college within the CUNY system.

16. At all times mentioned herein, Medgar Evers is and was an "employer" within the meaning of 42 U.S.C. § 2000e(b), NYSHRL § 292(5) and NYCHRL § 8-102(5).

17. At all times mentioned herein, Medgar Evers employed more than fifteen (15) employees.

18. At all times mentioned herein, Medgar Evers is and was vicariously liable for the actions of the individual defendants herein.

**Defendant Dr. Rudolph L. Crew**

19. At all times mentioned herein, Dr. Rudolph L. Crew (hereinafter "Dr. Crew"), was the President of Medgar Evers, a CUNY institution.

20. At all times mentioned herein, Dr. Crew was a policy maker for Medgar Evers, and Dr. Crew was endowed with final policy making authority for Medgar Evers College.

21. At all times mentioned herein, Dr. Crew was a policy maker for CUNY based upon his function, title and responsibilities as the President of Medgar Evers College.

22. This action is brought against Dr. Crew in his official and individual capacities.

23. At all times mentioned herein, the Defendants were collectively and/or separately acting under color of the laws of New York City and New York State, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New

York, and the City of New York, and the City University of New York Education system as a whole.

**FACTS**

24. In or around 2004, Medgar Evers hired the Plaintiff as a Distinguished Lecturer.

25. In or around 2009, Plaintiff began serving as the Chief Diversity Officer as Medgar Evers.

26. Thereafter, the Plaintiff began serving as the Chief Diversity Officer *and* Title IX Coordinator, the Plaintiff's duties included investigating sexual harassment and discrimination complaints within Medgar Evers.

27. During her tenure at Medgar Evers, Plaintiff investigated over forty (40) complaints effectively, and Plaintiff was re-appointed to the position annually, beginning in 2009 .

28. Defendant Dr. Crew was hired to serve as President of Medgar Evers in or around 2013.

29. On or about March 15, 2018, Dr. Brenda Greene ("Dr. Greene"), a Medgar Evers Employee, filed a complaint in which Dr. Greene alleged that Medgar Evers Provost, Dr. Augustine Okereke ("Dr. Okereke"), discriminated against her on the basis of her gender, retaliated against her, and harassed her in violation of law and CUNY policy.

30. Dr. Okereke and Dr. Crew work closely with one another in their respective positions at Medgar Evers.

31. When Dr. Crew learned of Dr. Greene's complaint, Dr. Crew stated in substance that Dr. Greene could not be trusted, and that Dr. Greene was "a troublemaker".

32. Dr. Crew made the above-referenced statements about Dr. Greene's complaint even though he had no direct knowledge as to the veracity of the same.

33. In response to Dr. Greene's complaint, Dr. Okereke filed a counter complaint against Dr. Greene in which he alleged stalking and discrimination on the basis of national origin.

34. Both Dr. Greene's complaint and Dr. Okereke's counter complaint were initially filed with the Plaintiff in her capacity as the Chief Diversity Officer and Title IX Coordinator for Medgar Evers.

35. In carrying out her duties and responsibilities as the Chief Diversity Officer and Title IX Coordinator for Medgar Evers, Plaintiff examined the complaints.

36. As part of her examination, Plaintiff scheduled an interview with Dr. Okereke.

37. Counsel for Medgar Evers College, Johnathon P. Hardaway, insisted on attending the scheduled interview with Plaintiff and Dr. Okereke.

38. Although Counsel for Medgar Evers initially stated he was present as an observer, Plaintiff was unsettled when Counsel for Medgar Evers interjected and attempted to influence the direction of the interview..

39. Plaintiff found merit in Dr. Greene's complaint against Dr. Okereke.

40. On or about April 9, 2018, Plaintiff referred both complaints to CUNY for external review and investigation.

41. Plaintiff transferred the complaints out of the internal Medgar Evers system because of Dr. Crew's statements regarding Dr. Greene, and the potential conflict that existed in Medgar Evers' Counsel's advocacy and interventions for Dr. Okereke during his interview.

42. Also, on or about April 9, 2018, Plaintiff informed Dr. Crew via email that both Dr. Greene's complaint against Dr. Okereke and Dr. Okereke's counter-claim, had been transferred out of Medgar Evers for external review.

43. The following day, April 10, 2013, the Plaintiff attended a Personnel and Budget ("P&B") Meeting at Medgar Evers College.

44. Prior to April 9, 2018, Plaintiff attended such P&B meetings in the past without incident on at least two occasions.

45. Shortly after the Plaintiff arrived at the meeting, a Professor in attendance objected to the Plaintiff's presence at the meeting thereby causing the Plaintiff to feel belittled and uncomfortable.

46. The Professor that objected to Plaintiff's presence had been, on two separate occasions, the subject of internal investigations that Plaintiff conducted.

47. Plaintiff left the P&B meeting following the objection to her presence and returned to her office to continue working

48. Later that same day (April 10, 2019), Dr. Crew's Chief of Staff, Lakisha Murray, called Plaintiff after regular business hours, asked who invited Plaintiff to the meeting, and directed the Plaintiff to return to campus to meet with Dr. Crew after hours, even though Plaintiff had left Medgar Evers campus for the day and was in the midst of picking up her daughter from elementary school.

49. Plaintiff returned to Medgar Evers Campus as directed and met with Dr. Crew.

50. During the after-hours meeting on April 10, 2019, Dr. Crew accused the Plaintiff of lying, stated that the Plaintiff was playing a game, and implied that the Plaintiff's job was now at risk.

51. During the after-hours meeting on April 10, 2019, Dr. Crew stood in a stance that felt threatening to Plaintiff and spoke in a tone that caused Plaintiff to feel belittled, threatened, and intimidated.

52. Immediately following their one-on-one conversation at the after-hours meeting on April 10, 2019, Dr. Crew led the Plaintiff into the President's Conference Room, where the P&B Meeting was still being held.

53. Dr. Crew interrupted the P&B meeting's scheduled agenda, and instructed the Plaintiff to stand in front of the room amongst Academic Chairpersons, as well as her colleagues and co-workers.

54. As Plaintiff stood in the front of the room, Dr. Crew interrogated the Plaintiff about why she entered the meeting earlier that morning and accused the Plaintiff of "colluding" with other staff members.

55. As Plaintiff stood in the front of the room, Dr. Crew pointed at two staff members, including Dr. Greene, and asked who invited the Plaintiff to the meeting.

56. As Plaintiff stood in the front of the room, Dr. Crew raised his voice at Plaintiff and Dr. Greene, and Dr. Crew waived his cellphone in the direction of Plaintiff causing the Plaintiff to become afraid and embarrassed.

57. Dr. Crew stated that there would be no more Mr. Nice Guy.

58. Though the Plaintiff maintained that she attended the meeting of her own accord, Dr. Crew encouraged a vote of sanctions against three female faculty members that had been accused of inviting the Plaintiff to the P&B meeting, notwithstanding Plaintiff's prior attendance at such meetings and the general denial from all three female faculty members that they invited Plaintiff.

59. On April 11, 2018, Dr. Crew drafted a disciplinary letter that was placed in Plaintiff's file because of Plaintiff's attendance at the P&B meeting.

60. The disciplinary letter stated that Plaintiff's attendance at the P&B meeting was an act of gamesmanship and divisiveness, and Dr. Crew stated that he had "lost faith in [Plaintiff's] ability to serve at the College."

61. The letter noted that a Professor objected to Plaintiff's attendance, and that the same Professor objected to Plaintiff's attendance at a prior meeting approximately one year prior; however, the Professor in question was not the Plaintiff's supervisor and did not have authority to ban the Plaintiff from Medgar Evers meetings.

62. On or about April 26, 2018, Dr. Crew submitted a second disciplinary letter, alleging that Plaintiff failed to provide Title IX training documentation to the CUNY Athletics conference ("Athletic Disciplinary Letter").

63. The Athletic Disciplinary Letter instructed the Plaintiff to provide such documentation before the close of business, which Plaintiff provided as requested

64. Plaintiff had been unable to complete training for the Athletic Department due to changes in the Athletic Department's leadership and non-compliance by key personnel.

65. In the weeks, leading up to the submission of the Athletic Disciplinary Letter, the Plaintiff had been working diligently to provide training to various members of the athletic department.

66. Plaintiff's efforts to train the athletic staff included making personal phone calls and emailing non-compliant members of the athletic staff, to schedule trainings that accommodated their schedules after regular business hours and on weekends.

67. While the Athletic Disciplinary letter purports to complain about the documentation, the letter goes on to state that Plaintiff has engaged in recent conduct that is "uncooperative" and "unprofessional" with no reference to specific behavior.

68. That same day, April 26, 2018, a letter of non-appointment was prepared and delivered to the Plaintiff, stating that her position would expire on June 30, 2018, and would not be renewed, thereby terminating the Plaintiff sixteen (16) days after she transferred Dr. Greene's complaint out of Medgar Evers for external review.

69. Prior to the Plaintiff transferring the Greene Complaint out the internal Medgar Evers system, the Plaintiff served as an employee of Medgar Evers and CUNY without incident, and her disciplinary record was unblemished.

70. Prior to April 26, 2018, Plaintiff received only one evaluation in her position as Chief Diversity Officer and Title IX Coordinator from Dr. Crew; the evaluation was received on or about January 27, 2017, and the evaluation was favorable.

71. The Defendants terminated Plaintiff in retaliation for her decision to transfer Dr. Greene's complaint out of Medgar Evers.

72. Medgar Evers College took no adverse action against Dr. Crew following Plaintiff's termination.

73. CUNY took no adverse action against Medgar Evers or Dr. Crew following Plaintiff's termination.

**LEGAL CLAIMS**
**COUNT I: VIOLATION OF 42 U.S.C. § 1981**
**(As and against all Defendants)**

74. Plaintiff repeats, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

75. The Plaintiff was engaged in protected activity when Plaintiff received and conducted a preliminary investigation into Dr. Greene's complaint against Dr. Okereke.

10

76. The Plaintiff was engaged in protected activity when Plaintiff received and conducted a preliminary investigation into Dr. Okereke's complaint against Dr. Greene.

77. The Plaintiff was engaged in protected activity when Plaintiff made the decision to transfer each of the aforementioned complaints out of the internal Medgar Evers system and to the overall CUNY system.

78. Defendant Dr. Crew was aware the Plaintiff engaged in protected activity because the Plaintiff informed Dr. Crew about the aforementioned complaints when Plaintiff received them.

79. Defendant Dr. Crew was aware the Plaintiff engaged in protected activity because the Plaintiff informed Dr. Crew that the complaints had been transferred out of the internal Medgar Evers system and into the CUNY-wide system.

80. Defendant Medgar Evers was aware that the Plaintiff engaged in protected activity because Dr. Crew, the President of Medgar Evers, had direct knowledge of the Plaintiff's activity and was/is a policy maker and is empowered with final policy making authority for Medgar Evers.

81. Defendant CUNY was aware that Plaintiff engaged in protected activity because the Greene and Okereke complaints were transferred so that such complaints could be investigated within CUNY, but outside of Medgar Evers.

82. The Defendants' individually and/or collectively caused the Plaintiff to suffer material adverse employment action the day after Plaintiff engaged in the protected activity described herein; specifically, the Plaintiff was publicly ridiculed in the workplace, physically intimidated, and disciplined without cause.

83. The Defendants' individually and/or collectively caused the Plaintiff to suffer material adverse employment action approximately sixteen (16) days after Plaintiff engaged in the

11

protected activity described herein; specifically, the Plaintiff was terminated without cause after having served Medgar Evers and CUNY for approximately fourteen (14) years without incident.

84. There is a causal connection between Plaintiff's protected activity in that Plaintiff would not have been terminated but for her investigation into, and transfer of, the Greene and Okereke complaints.

85. Because of the Defendants' willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been denied her right to equal employment opportunity in violation of Section 1981 pursuant to Section 1983.

86. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

### COUNT II: VIOLATION OF 42 U.S.C. § 1981
(*Monell* Claim Against Defendant CUNY)

87. Plaintiff repeats, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

88. It was the policy and/or custom of CUNY to tolerate acts of misconduct, bullying, and retaliation for engaging in protected activity as evidenced by the customs and policies described herein and in Dr. Crew's direct participation in the deprivation of Plaintiff's civil rights, as well as CUNY'S knowledge of and failure to remedy the violation of Plaintiff's civil rights.

89. The policies and customs of CUNY to tolerate such acts of misconduct, discrimination and retaliation are evidenced not only in CUNY's oversight of Medgar Evers, but also in the administration of other CUNY-based institutions; specifically, City College, John Jay College of Criminal Justice, and Kingsborough Community College.

90. Specific examples of the manner in which CUNY tolerates acts of misconduct, discrimination and retaliation include but are not limited to: (a) denying tenure to a female Professor at City College solely because she suffers from multiple sclerosis, (b) terminating the female Dean of Diversity at City College because she substantiated a discrimination complaint against the City College President, (c) failing to properly investigate Professors that sexually harassed female students at John Jay College of Criminal Justice, and (d) failing to take remedial action to prevent religious-based discrimination at CUNY affiliate institution Kingsborough Community College.

91. The discriminatory and retaliatory actions against Plaintiff were not an isolated incident, but instead were the result of policies and practices that exist within CUNY as a whole, wherein unlawful discrimination and retaliation are tolerated.

92. As a result of the policies and practices, the Plaintiff has suffered the damages set forth herein in an amount to be determined by a jury at trial.

### COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.SC. 2000e-3)
### (As and against all Defendants)

93. Plaintiff repeats, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

94. The Plaintiff was engaged in protected activity, and the Defendant was aware of Plaintiff's activity.

95. As a result of the Defendants' willful and deliberate actions described herein, and as a proximate cause thereof, Plaintiff has been retaliated against in violation of Title VII of The Civil Rights Act of 1964.

96. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

### COUNT IV: VIOLATION OF NEW YORK STATE EXECUTIVE LAW § 296
### (As and against all Defendants)

97. Plaintiff repeats, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

98. The Plaintiff was engaged in protected activity, and Defendants were aware of Plaintiff's activity.

99. As a result of the Defendants' willful and deliberate actions described herein, and as a proximate cause thereof, Plaintiff has been retaliated against in violation of New York State Executive Law § 296.

100. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

### COUNT V: VIOLATION OF NEW YORK CITY ADMIN. CODE § 8-107
### (As and against all Defendants)

101. Plaintiff repeats, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

102. The Plaintiff was engaged in protected activity, and the Defendant was aware of Plaintiff's activity.

103. As a result of the Defendants' willful and deliberate actions described herein, and as a proximate cause thereof, Plaintiff has been retaliated against in violation of New York City Administrative Code § 8-107.

104. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for relief as follows: (1) that the Court determine and enter judgment declaring that the acts and omissions of the Defendant, as set forth above, violate rights secured to by the Plaintiff by the United States Constitution, the Constitution of the State of New York, and the New York City Human Rights Law; (2) that the Court award compensatory damages to the Plaintiff; (3) that the Court award punitive damages to the Plaintiff; (4) that the Defendant be required to pay the legal costs, attorney's fees, and expenses in this action; and (5) that the Court grant such further and additional relief as is just and proper.

Dated: New York, New York
October 5, 2019

                Respectfully Submitted,

BY:   /s/Richard J. Washington
Richard J. Washington, Esq. (RW 4793)
THE LAW OFFICES OF RICHARD J. WASHINGTON, P.C.
*Attorney for Plaintiff*
100 Church Street, Suite 800
New York, New York 10007
Tel:  (646) 845-7445
Fax:  (646) 607-9383

To:
Clement J. Colucci
Assistant Attorney General
Office of the Attorney General for the
State of New York
*Attorney for Defendants*
28 Liberty Street
New York, New York 10005
(via ECF)